**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE,<br><br>Plaintiff,<br><br>v.<br><br>PARAGON INTEGRATED SERVICES GROUP, LLC,<br><br>Defendant / Third-Party Plaintiff,<br><br>v.<br><br>IPC SERVICES, LLC,<br><br>Defendant / Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:23-2096-RJC |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are the following Motions: (1) a Partial Motion to Dismiss (ECF No. 53) filed by Defendant/Third-Party Defendant IPC Services, LLC ("IPC") as to the Amended Complaint (ECF No. 43) filed by Plaintiff St. Paul Fire and Marine ("St. Paul"); (2) a Partial Motion to Dismiss (ECF No. 55) filed by IPC as to the Third-Party Complaint against IPC (ECF No. 38) filed by Defendant/Third-Party Plaintiff Paragon Integrated Services Group, LLC ("Paragon"); (3) Paragon's Motion for Judgment on the Pleadings (ECF No. 82) seeking judgment

as to St. Paul's claims against Paragon; and (4) St. Paul's Partial Motion for Judgment on the Pleadings (ECF No. 85) seeking judgment as to certain of St. Paul's claims against Paragon. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). The Motions at issue herein have been fully briefed and are ripe for disposition. For the reasons that follow, the Court will deny IPC's Partial Motion to Dismiss St. Paul's Amended Complaint, will grant IPC's Partial Motion to Dismiss Paragon's Third-Party Complaint, and will deny St. Paul's and Paragon's Motions for Judgment on the Pleadings.

## I. Background

### A. Factual Allegations in St. Paul's Amended Complaint

In its Amended Complaint, St. Paul asserts the following factual allegations relevant to the Court's consideration of the motions at issue:

At all relevant times, St. Paul provided a policy of insurance covering "environmental cleanup" (the "Policy") to PennEnergy Resources, LLC ("PennEnergy"). ECF No. 43 at ¶ 3. St. Paul is PennEnergy's subrogee, and, by way of this action, seeks to recover losses pursuant to the Policy for payments it allegedly made on PennEnergy's behalf to clean up environmental damage at a wellsite (the "Wellsite") owned by PennEnergy in Evans City, Pennsylvania. *Id.* at ¶¶ 3; 15-16.

On September 20, 2021, PennEnergy and Paragon entered into an Oilfield Master Service Agreement (the "MSA"), pursuant to which Paragon agreed to provide "synthetic oil base mud materials and services, onsite mud engineering, closed loop equipment and service, and related goods and services or such good and services described in a [work order executed pursuant to the MSA]" and to perform these duties as an independent contractor for PennEnergy. ECF No. 43 at

¶ 12; ECF No. 103 at 1. The MSA contains a "Contractor Environmental Indemnity" clause that provides:

> (e) <u>CONTRACTOR ENVIRONMENTAL INDEMNITY.</u> EXCEPT TO THE EXTENT ATTRIBUTABLE TO THE WILLFUL MISCONDUCT OF ANY MEMBER OF COMPANY GROUP, CONTRACTOR SHALL ASSUME ALL RESPONSIBILITY FOR CONTROL AND REMOVAL OF AND SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS EACH MEMBER OF COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING DIRECTLY OR INDIRECTLY FROM POLLUTION OR CONTAMINATION (INCLUDING NATURALLY OCCURRING RADIOACTIVE MATERIAL) FROM SPILLS OF FUELS, LUBRICANTS, MOTOR OILS, PIPE DOPE, PAINTS, SOLVENTS, BALLAST, BILGE, GARBAGE, AND OTHER SUBSTANCES TO THE EXTENT THAT SUCH SUBSTANCES ARE IN CONTRACTOR GROUP'S POSSESSION AND CONTROL OR SUCH POLLUTION IS CAUSED BY CONTRACTOR GROUP'S EQUIPMENT OR SERVICES. WITHOUT RELIEVING CONTRACTOR OF ANY OF ITS INDEMNITY OBLIGATIONS HEREUNDER, COMPANY MAY TAKE ANY ACTION IT DEEMS NECESSARY OR DESIRABLE TO CONTROL AND REMOVE ANY POLLUTION, CONTAMINATION, OR SPILLS OF ANY SUBSTANCES, WHICH ARE THE RESPONSIBILITY OF CONTRACTOR UNDER THIS SECTION 8(E), AND CONTRACTOR SHALL REIMBURSE COMPANY TO THE EXTENT SUCH CONTROL AND REMOVAL IS THE OBLIGATION OF CONTRACTOR.

ECF No. 43 at ¶ 13; ECF No. 103 at 9-10. With respect to Paragon's required insurance endorsements, the MSA provides:

> <u>Contractor's Required Endorsements.</u> Contractor covenants and agrees that all of its, and its Subcontractors', general commercial liability, automobile, umbrella and, when applicable, professional liability/errors & omissions insurance policies will: (i) include each member of Company Group as additional insureds, as their interests may attach; (ii) provide that the inclusion of additional insureds will not in any way affect the rights of any insureds as respects any Claim made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured, such that the policy will protect each insured in the same manner as though a separate policy had been issued to each, subject to the amount of coverage provided by such policy; and (iii) be primary with respect to any liability assumed under this Agreement. Additionally, Contractor covenants and agrees that all of its, and its Subcontractors, general commercial liability, automobile, umbrella, workers' compensation and, when applicable, professional liability/errors & omissions insurance policies will waive any right of subrogation against any member of Company Group.

ECF No. 43 at ¶ 14; ECF No. 103 at 14.

In November or December of 2021, Paragon and/or IPC (as Paragon's subcontractor) provided synthetic base oil to the Wellsite. ECF No. 43 at ¶ 15. St. Paul avers that Paragon and/or IPC were responsible for maintenance and operation of an oil tank, and the hoses used to fill the tank, on the Wellsite. *Id*. On December 17, 2021, someone discovered a leak of Paragon's product near the above-ground storage tank that Paragon utilized to store its product at the Wellsite. *Id.* at ¶ 17. On that date or shortly thereafter, someone discovered that one of the above-ground storage tank's valves was damaged. *Id.* at ¶ 18. St. Paul asserts that the leak of Paragon's product at the Wellsite was a result of the damaged valve. *Id*. Paragon, IPC, and/or one of their subcontractors caused the damage to the tank valve. *Id.* at ¶ 19. Paragon, IPC, and/or one of their subcontractors failed to report the damaged valve and the resultant oil leak to PennEnergy, and they failed to repair the damage to the valve. *Id.* at ¶ 20.

On or shortly after December 17, 2021, someone also discovered that Paragon, IPC, and/or one of their subcontractors connected a broken line and/or improperly connected a line to the drain side of the damaged tank valve. ECF No. 43 at ¶ 21. The damaged or improperly connected line caused and/or contributed to the leak of Paragon's product at the Wellsite. *Id*. Paragon, IPC, and/or one of their subcontractors failed to report the damaged or improperly connected line and the resultant oil leak to PennEnergy, and they failed to repair the damage to the line. *Id.* at ¶ 22.

On or shortly after December 17, 2021, someone further discovered that a hose controlled and used by Paragon, IPC, and/or one of their subcontractors to supply the synthetic base oil product was damaged, and that the hose was leaking or contributing to the oil leak at issue. ECF No. 43 at ¶ 23. Around the same time, someone discovered damage to the line that supplied

Paragon's product. *Id.* at ¶ 24. This damage allowed a leak to occur, and is attributable to Paragon, IPC, and/or one of their subcontractors. *Id.*

The above-ground storage tank that contained Paragon's synthetic base oil had a "secondary brim" that was designed to contain the release of any of Paragon's product. ECF No. 43 at ¶ 25. Paragon, IPC, and/or one of their subcontractors left a draped line over the secondary brim causing damage to the containment basin and brim, allowing the tank to release any leaked synthetic base oil to the surface of the well pad site. *Id.* at ¶ 26. Throughout the delivery of its product, Paragon, IPC, and/or one of their subcontractors did not maintain a system that tracked the amounts of their deliveries to the Wellsite and that monitored consumption of Paragon's product and storage levels. *Id.* at ¶ 27. Such a system would have enabled early detection of a leak of Paragon's product. *Id.*

St. Paul avers that, pursuant to the MSA, the defendants in this matter were required to provide insurance to cover the leak at issue, and that no such coverage has been provided to date. ECF No. 43 at ¶¶ 30-31. It asserts that Paragon and/or its subcontractors are contractually liable for any environmental damage caused by the release of Paragon's product, and that neither Paragon nor its subcontractors have paid for the environmental damage or cleanup costs associated with the leak of Paragon's product. *Id.* at ¶ 32. St. Paul asserts that the leak itself and Defendants' failure to indemnify St. Paul constitutes a breach of the MSA. *Id.* at ¶ 38. As to its negligence claim, St. Paul asserts that Paragon and/or IPC had a duty to "ensure that the synthetic base oil product was safely delivered, safely transferred from the transporting vehicle, safely stored in a secure storage tank, and that the storage tank, its valves and its lines, which held and were used with the product[,] were in good order and free from leaks," as well as a duty to monitor their product delivery amounts and consumption to allow for early detection of any leak. *Id.* at ¶¶ 42-

43. St. Paul asserts that the breach of these duties has resulted in damages in the form of St. Paul's payment for environmental cleanup totaling $2,143,134.35. *Id.* at ¶ 47. By way of its Amended Complaint, St. Paul asserts claims against Paragon and IPC for declaratory judgment, breach of contract, and negligence.

**B. Factual Allegations in Paragon's Third-Party Complaint[1]**

In its Third-Party Complaint, Paragon asserts the following factual allegations relevant to the Court's consideration of the motions at issue:

In order to provide the services outlined in the MSA, Paragon solicited IPC to procure, deliver, and offload base oil into PennEnergy's tank at the Wellsite. ECF No. 38-2 at ¶ 8. Paragon and IPC entered into an agreement that involved both oral and written representations including communications and invoices, thus, according to Paragon, establishing a contractual relationship between the two entities that included an implied warranty that IPC would perform its services in a good and workmanlike manner. *Id.* at ¶ 9.

On December 13, 2021, IPC went to the Wellsite and delivered and offloaded a load of base oil at the Wellsite. ECF No. 38-2 at ¶ 10. During this process, IPC personnel attached one of IPC's hoses to the oil tank in order to offload the base oil. *Id*. At the time of use, IPC's hose was located within a protective spill barrier that was intended to prevent any leakage of base oil into the surrounding environment. *Id*. IPC personnel instructed Paragon not to touch and/or handle the IPC hose, and Paragon personnel complied with that instruction. *Id.* at (second) ¶ 10.

Following the December 17, 2021 discovery of the base oil leak, which was outside the tank and the protective spill barrier, someone determined that the hose utilized by IPC for offloading the base oil was split in half, thus resulting in the leak. ECF No. 38-2 at ¶ 11. The hose

[1] In the interest of efficiency, the Court will not reiterate alleged facts addressed in the Court's description above.

was last used by IPC on December 13, 2026. *Id.* Because IPC failed to properly maintain the hose at issue and keep it within the protective spill barrier, the base oil leak contaminated the land at the Wellsite resulting in the damages for remediation discussed above. *Id.* at (second ) ¶ 11.

Paragon asserts that IPC was negligent in performing the duties that Paragon solicited and paid for because IPC failed to adequately maintain its hose to ensure that no leak occurred, and that it is liable for breach of contract and breach of warranty for failing to provide the bargained-for services in a good and workmanlike manner. ECF No. 38 at ¶¶ 13-14. Paragon asserts claims for negligence, breach of contract, and breach of warranty against IPC.

**C. Relevant Procedural History and Docket Entries Submitted by the Parties**

St. Paul's original complaint (ECF No. 1) named Paragon and five John Doe defendants. Following the commencement of discovery in this matter, St. Paul was granted leave to file its Amended Complaint, which substituted IPC for one of the John Doe defendants. Paragon subsequently filed an Answer (ECF No. 46) to St. Paul's Amended Complaint, and was granted leave to file its Third-Party Complaint against IPC. Thereafter, the parties filed the motions at issue herein. At the Court's request, the parties filed the MSA (ECF No. 103) on September 16, 2026.

With respect to IPC's Partial Motion to Dismiss St. Paul's Amended Complaint, the parties have submitted the following relevant docket entries: (1) IPC's Brief in Support (ECF No. 54); and (2) St. Paul's Response (ECF No. 62) and Brief in Opposition (ECF No. 63).

With respect to IPC's Partial Motion to Dismiss Paragon's Third-Party Complaint, the parties have submitted the following relevant docket entries: (1) IPC's Brief in Support (ECF No. 56); (2) Paragon's Response (ECF No. 60) and Brief in Opposition (ECF No. 61); and (3) IPC's Reply (ECF No. 65).

With respect to Paragon's Motion for Judgment on the Pleadings Against St. Paul, the parties have submitted the following relevant docket entries: (1) Paragon's Brief in Support (ECF No. 84); (2) St. Paul's Response (ECF No. 88) and Brief in Opposition (ECF No. 89); and Paragon's Reply (ECF No. 92).

With respect to St. Paul's Motion for Judgment on Pleadings Against Paragon, the parties have submitted the following relevant docket entries: (1) St. Paul's Brief in Support (ECF No. 81) and Exhibits (ECF Nos. 80-2 – 80-5); (2) Paragon's Response (ECF No. 86) and Brief in Opposition with attached Exhibits (ECF No. 87); and St. Paul's Reply (ECF No. 91).

## II. Legal Standards

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also

consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

**B. Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2012); *see also Harleysville INS. Co. of New York v. Cerciello*, No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. 2010) ("The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss."); *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x. 143, 147 (3d Cir. 2011).

"In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Selective Way Ins. Co. v. Gingrich*, No. 1:10-CV-405, 2010 WL 4362450, at *2 (M.D. Pa. Oct. 27, 2010) (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). "A court presented with a motion for judgment on the pleadings must consider the

plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D. Pa. 2013)). A motion for judgment on the pleadings may be granted where "'the movant clearly establishes that no material issue of fact remains to be resolved' and that it is 'entitled to judgment as a matter of law.'" *Wiseman Oil Co. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 600 (W.D. Pa. 2012) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

## III. Discussion

### A. IPC's Partial Motion to Dismiss St. Paul's Amended Complaint (ECF No. 53)

IPC seeks dismissal of Count II of St. Paul's Amended Complaint, which asserts a claim for breach of contract against Paragon and/or its subcontractors, including IPC. IPC asserts that Count II should be dismissed as to IPC because St. Paul fails to plead facts that could support the existence of a contractual relationship between IPC and St. Paul and/or PennEnergy. ECF No. 53 at ¶ 9. St. Paul argues that the Motion to Dismiss the Amended Complaint is premature, and that discovery should be permitted to determine whether St. Paul constitutes a third-party beneficiary of the contract entered into between Paragon and IPC.

The Court agrees with St. Paul. First, discovery has already commenced in this matter, and IPC seeks dismissal of only one of the three claims against it. As will be a consistent theme in this Memorandum Opinion, the Court believes that this issue is one that can be more effectively addressed at summary judgment with the benefit of all relevant discovery. As alleged, IPC performed work as a subcontractor at the Wellsite owned by St. Paul's insured pursuant to a contract with Paragon. According to the Paragon's Third-Party Complaint, Paragon and IPC entered into an agreement for IPC's provision of those services. It is simply not clear based on

this record what relationship, if any, existed or was established between IPC and St. Paul. All arguments are preserved, and this issue can be more effectively addressed at the conclusion of discovery. Accordingly, IPC's Partial Motion to Dismiss St. Paul's Amended Complaint (ECF No. 53) will be denied.

**B. IPC's Partial Motion to Dismiss Paragon's Third-Party Complaint (ECF No. 55)**

IPC seeks dismissal of Count I (negligence) of Paragon's Third-Party Complaint on the basis of the gist of the action doctrine. ECF No. 55 ¶ 6. IPC asserts that Paragon's negligence claim relies on an assertion of a breach of a duty that arose out of the terms of the alleged contract between Paragon and IPC for the delivery and offload of base oil at the Wellsite, and that it arises out of, was created by, and is entirely dependent upon and grounded in that contract. *Id.* at ¶ 10. IPC argues that Paragon has thus not asserted facts sufficient to support a breach of a broader social duty collateral to the parties' contract, and that Count I should be dismissed. *Id.* at ¶ 11. Paragon argues that its negligence claim is based on the breach of a social duty imposed by tort law in addition to the breach of contract it pleads in its Third-Party Complaint. ECF No. 61 at 2.

With respect to the gist of the action doctrine, the Supreme Court of Pennsylvania has explained:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it

> must be regarded as a tort. . . . Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions. We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint.
>
> Notably, and of relevance to the case at bar, our prior decisions in *Zell* and *Krum* underscore that the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party. . . .
>
> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014) (footnotes omitted) (citations omitted).

In ultimately finding that the negligence claim in *Bruno* was not barred by the gist of the action doctrine, the Supreme Court of Pennsylvania held:

> Accordingly, while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Bruno*, 106 A.3d at 71. The United States District Court for the Middle District of Pennsylvania has explained:

> A certain tension exists, at the motion to dismiss stage, between Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative. District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage.

*Odgers v. Progressive N. Ins. Co.*, 112 F. Supp. 3d 286, 292 (M.D. Pa. 2015).

With these principles in mind, this Court agrees with IPC on this issue. Paragon pleads only the breach of a contractual duty between it and IPC, not a broader societal duty. Paragon alleges that it entered into a contract with IPC for the procurement, delivery, and offloading of base oil into PennEnergy's tank at the Wellsite. Paragon alleges that IPC failed to perform its duties in a good and workmanlike manner. See ECF No. 38 at ¶ 13 ("Paragon now brings this Third-Party claim against IPC alleging that IPC was negligent *in performing the duties Paragon solicited and paid for* by failing to adequately maintain the Hose to ensure no leak occurred." (emphasis added)). While the Court acknowledges that a party may plead in the alternative, it is plain that Paragon's negligence claim is a recast breach of contract claim. IPC's Partial Motion to Dismiss Paragon's Third-Party Complaint (ECF No. 55) will be granted.

**C. Paragon's Motion for Judgment on the Pleadings Against St. Paul (ECF No. 82)**

Paragon argues that, by way of section 9 of the MSA, PennEnergy agreed that it and St. Paul waived any right to subrogation against Paragon. ECF No. 82 at ¶ 14. Paragon further argues that, under the terms of the indemnity and hold harmless clause at section 8(f) of the MSA, "PennEnergy assumed responsibility for control and removal of the pollution and agreed to hold Paragon harmless from the instant claim against Paragon arising out of performance of services under this agreement." *Id.* at ¶ 17. Paragon seeks judgment in its favor as to each of St. Paul's claims.

"In a subrogation action, an insurance company stands in the shoes of its insured after it has paid an amount which represents the tortfeasor's debt to the insured[,]" and "[t]he subrogee is subject to all defenses that could be raised against its insured." *Arch Ins. Co. v. Carol & Dave's Roadhouse, Inc.*, No. 2:11-CV-801, 2013 WL 607829, at *2 (W.D. Pa. Feb. 19, 2013), *aff'd*, 567 F. App'x 131 (3d Cir. 2014).

In seeking judgment on the pleadings in its favor, Paragon relies on the following provision in the MSA:

> (c) [Company's] Required Endorsements. Company covenants and agrees that all of its general commercial liability, automobile, and umbrella insurance policies will: (i) include each member of Contractor Group as additional insureds, as their interests may attach; (ii) provide that the inclusion of additional insureds will not in any way affect the rights of any insureds as respects any Claim made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured, such that the policy will protect each insured in the same manner as though a separate policy had been issued to each, subject to the amount of coverage provided by such policy; and (iii) be primary with respect to any liability assumed under this Agreement. Additionally, Company covenants and agrees that all of its general commercial liability, automobile, umbrella, and workers' compensation insurance policies will waive any right of subrogation against any member of Contractor Group.

ECF No. 103 at 14. Pursuant to the MSA, "'Contractor Group' means contractor, subcontractors, and its and their respective affiliates, shareholders, members, managers, owners, officers, directors, employees, and invitees." *Id.* at 8. Paragon asserts that, pursuant to these provisions, PennEnergy and St. Paul waived any right of subrogation against Paragon, and that the current lawsuit is thus prohibited by the terms of the MSA. ECF No. 84 at 5-6.

Paragon further relies on the "Company Environmental Indemnity" clause of the MSA, which provides:

> EXCEPT TO THE EXTENT ATTRIBUTABLE TO THE WILLFUL MISCONDUCT OF ANY MEMBER OF CONTRACTOR GROUP, COMPANY SHALL ASSUME ALL RESPONSIBILITY FOR CONTROL AND REMOVAL OF AND SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD

> HARMLESS EACH MEMBER OF CONTRACTOR GROUP FROM AND AGAINST ALL CLAIMS FROM ALL EXISTING POLLUTION AND FROM ALL POLLUTION OR CONTAMINATION, OTHER THAN THAT DESCRIBED IN SECTION 8(E), ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OF SERVICES UNDER THIS AGREEMENT INCLUDING THAT WHICH MAY RESULT FROM FIRE, BLOWOUT, CRATERING, LOST CIRCULATION, FISH RECOVERY MATERIALS AND FLUIDS, SEEPAGE OR ANY OTHER UNCONTROLLED FLOW OF OIL, GAS, WATER OR OTHER SUBSTANCE, AS WELL AS THE USE OR DISPOSITION OF ALL DRILLING FLUIDS, INCLUDING OIL EMULSION, OIL BASE OR CHEMICALLY TREATED DRILLING FLUIDS, AND CONTAMINATED CUTTINGS OR CARVINGS.

ECF No. 103 at 10. Paragon argues that St. Paul fails to allege willful misconduct on Paragon's part, and that judgment should be entered in its favor due to the MSA's indemnity clause because PennEnergy assumed responsibility for the control and removal of any environmental pollution. ECF No. 84 at 8-10.

Paragon acknowledges that it did not explicitly raise these defenses by way of its Answer, and it seeks leave to amend to rectify that issue. ECF No. 92 at 2. The Court believes that proposal to be the most practical and logically sound solution in this matter, and deems no issue waived at this juncture. *See Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir. 1991) ("Failure to raise an affirmative defense by responsive pleading or appropriate motion, however, does not always result in waiver. Under Fed.R.Civ.P. 15(a), a responsive pleading may be amended at any time by leave of court to include an affirmative defense, and leave shall be freely given when justice so requires." (citations omitted)). At this juncture, the pleadings do not include the defenses asserted by Paragon. That said, the parties have essentially completed discovery, *see* ECF No. 104, and summary judgment practice appears inevitable. In light of the same, the Court will grant Paragon leave to amend, and hereby finds that all arguments set forth in its Motion for Judgment on the Pleadings are preserved. The Court will consider such arguments, if re-raised, at the summary

judgment stage of this matter. Accordingly, Paragon's Motion for Judgment on the Pleadings is denied at this time.

**D. St. Paul's Motion for Partial Judgment on Pleadings Against Paragon (ECF No. 85)**

St. Paul seeks an order granting judgment in its favor against Paragon as to Count I (declaratory judgment) and Count II (breach of contract) of St. Paul's Amended Complaint, and asserts that, should the Court grant St. Paul's Motion, the only issue remaining would be the amount of the damages as to Counts I and II. ECF No. 83. St. Paul argues that, under the terms of the MSA and when considering other documents whose authenticity is not in question, Paragon contractually assumed the risk, and is thus liable, for the spill at issue. ECF No. 85 at ¶ 4.

St. Paul tacitly acknowledges that its assertions may more appropriately be addressed at the summary judgment stage by relying on documents outside of the pleadings, and that issues of fact clearly preclude judgment at this time, particularly as to the issue of potential willful misconduct. Paragon also relies on numerous exhibits that are not a part of the pleadings in this matter in opposing St. Paul's Motion. Again, the Court anticipates that each party might have arguments to present after the completion of discovery based upon a complete record. It seems most sensible to this Court, given that the parties have almost completed discovery, to resolve the issues raised by St. Paul at the next phase of this case, with all issues as to summary judgment being raised at the same time. Again, all arguments are preserved, but St. Paul's Motion for Judgment on the Pleadings as to Paragon will be denied at this juncture.

**IV. Conclusion**

For the reasons discussed above, the Court will deny IPC's Partial Motion to Dismiss St. Paul's Amended Complaint, will grant IPC's Partial Motion to Dismiss Paragon's Third-Party

Complaint, and will deny St. Paul's and Paragon's Motion for Judgment on the Pleadings. Paragon will be granted leave to file an amended answer. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*_______
Robert J. Colville
United States District Judge

DATED: September 28, 2026

cc: All counsel of record